**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-01304-CMA-CBS

JOSEPH DANILUK,

    Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY COMPANY,

    Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Norfolk Southern Railway Company's ("Norfolk") Motion for Summary Judgment. (Doc. # 21.) For the following reasons, the Court grants this motion.

### I.    BACKGROUND

Plaintiff Joseph Daniluk is the sole shareholder of IICOC, Inc. doing business as Superloads, Inc. ("Superloads"), which is a Colorado corporation. (Doc. # 37, ¶¶ 5, 9.) Norfolk is a wholly owned subsidiary of Norfolk Southern Corporation, which is a Virginia corporation registered to do business in Colorado. (Doc. # 1, ¶ 6.) In or around 2009, HHI Hyundai Heavy Industries Co., Ltd. ("HHI") sold a 650 mega volt ampere transformer ("Transformer") to PPL Electric Utilities Corporation ("PPL"). (Doc. # 21, ¶ 1.) To move the Transformer from HHI's manufacturing facility in Korea to PPL's substation in Pennsylvania, HHI selected Eunsan Shipping & Aircargo, Ltd. ("Eunsan"),

a Korean freight forwarder. (*Id.* at ¶¶ 6, 10.) In turn, Eunsan subcontracted with Suntrans International, Inc. ("Suntrans"), to act as the domestic freight forwarder for the Transformer within the United States. (*Id.* at ¶ 11.) Suntrans subsequently engaged Superloads to make all arrangements for the movement of the Transformer within the United States. (*Id.* at ¶ 14.) Superloads—a company that contracted with various transportation companies, including maritime, air, rail, and motor carriers to ship items—retained Norfolk to perform the rail segment of the shipment's journey from the port in western Pennsylvania to Newport. (*Id.* at ¶¶ 19, 25.) Other than relatively minor weather delays, the Transformer shipment proceeded as planned until it reached western Pennsylvania. (*Id.* at ¶ 26.)

Shortly after the Transformer was offloaded from the river barge in Pennsylvania, a dispute arose between Norfolk and Superloads concerning the rail clearances and permits necessary to move the 400,000-pound Transformer. (*Id.* at ¶¶ 2, 27.) Although Superloads was responsible for obtaining the necessary clearances and certifications from appropriate jurisdictions and regulatory bodies, Norfolk, as the actual transporter, needed to ensure that HHI had the proper permits and lease agreements to demonstrate that the transportation of the Transformer was safe. (*Id.* at ¶¶ 20, 28.) Because the dispute between Superloads and Norfolk was significantly delaying delivery of the Transformer, HHI sent its logistics manager, John Egan, to help resolve the issue. (*Id.* at ¶ 29.) Mr. Egan, thereafter, became the project manager for the rail portion of the Transformer shipment. (*Id.* at ¶ 32.) Despite Mr. Egan's intervention, Superloads remained involved in the rail portion of the Transformer shipment until its

conclusion and Suntrans paid Superloads pursuant to their original contract. (*Id.* at ¶¶ 33, 42.) Following the completion of the shipment, HHI and Suntrans placed Superloads on its "do-not-use" list. (Doc. ## 21, ¶ 49; 31, ¶ 51.) Superloads subsequently filed for bankruptcy in May 2011. (Doc. # 21, ¶ 52.)

On May 17, 2013, the Trustee in Superload's bankruptcy case[1] filed suit against Norfolk in this Court, seeking damages arising from tortious interference with contract and tortious interference with prospective business relations. (Doc. # 1.) Norfolk now moves for summary judgment on all claims. (Doc. # 21.) On July 25, 2014, Plaintiff filed a Response (Doc. # 31), to which Norfolk replied on August 11, 2014 (Doc. # 32).

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing motions for

---

[1] On May 19, 2011, IIOC, Inc., doing business as Superloads, filed its voluntary petition for relief under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") in the Bankruptcy Court for the District of Colorado under case number 11-21837-MER. (Doc. # 37, ¶ 1.) Pursuant to Bankruptcy Code Section 541, Superloads' claim against Norfolk is an asset of Superloads' bankruptcy estate. (*Id.* at ¶ 2.) Thus, the duly appointed Trustee filed Superloads' Complaint against Norfolk on May 17, 2013. (*Id.* at ¶¶ 2–3.) On September 9, 2014, the Bankruptcy Court approved a settlement agreement between the Trustee and Mr. Daniluk in which he was assigned all rights to the claim. (*Id.* at ¶ 4.) On October 30, 2014, the Trustee filed a motion to substitute Mr. Daniluk as plaintiff to the claim. (Doc. # 37.) The Court granted this motion on November 17, 2014. (Doc. # 39.)

summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

### III.   DISCUSSION

**A.   CHOICE OF LAW**

As an initial matter, this Court must determine which state's law to apply. There are potentially two states' laws at issue here—Pennsylvania and Colorado. Pennsylvania is where Norfolk's alleged conduct primarily occurred; and Colorado is Superloads' domicile and where Superloads allegedly sustained injury.

"When more than one body of law may be applicable to a claim or issue, a court need not choose which body of law to apply unless there is an outcome determinative conflict between the potentially applicable bodies of law. If there is no outcome determinative conflict in the potentially applicable bodies of law, the law of the forum is applicable." *Iskowitz v. Cessna Aircraft Co.*, No. 07–cv–00968, 2010 WL 3075476, at *1 (D. Colo. Aug. 5, 2010) (unpublished) (internal citations omitted); *see also United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F.Supp. 861, 866 (D. Colo. 1996). The required elements of tortious interference claims in Pennsylvania and Colorado are substantially the same. *See Phillips v. Selig*, 959 A.2d 420, 428 (Pa. 2008) (citing Restatement (Second) of Torts § 766 (1979), the court specifies the elements for an interference with prospective contractual relations claim); *Krystkowiak v. W.O. Brisben Cos., Inc.*, 90 P.3d 859, 871 (Colo. 2004) (citing Restatement (Second) of Torts § 766 (1979)) (intentional interference with contract); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 500 (Colo. 1995) (citing Restatement (Second) of Torts § 766 (1979)) (intentional interference with prospective business relations); *Daniel Adams Assocs., Inc. v. Rimbach Pub., Inc.*, 519 A.2d 997, 1000 (Pa. 1987) (citing Restatement (Second) of

Torts § 766 (1979)) (malicious interference with contract). Because no outcome determinative conflict of law exists, the Court will apply Colorado law, the law of the forum.

**B.    TORTIOUS INTERFERENCE CLAIMS**

Plaintiff claims Norfolk intentionally interfered with the contract between Suntrans and Superloads.  Plaintiff alleges that because Norfolk advised HHI to remove Plaintiff as "shipper" on "legal documents," the contract between Suntrans and Superloads terminated.  Plaintiff further alleges that Superloads' reputation was damaged because HHI stepped in as "shipper"; and thus, Superloads lost prospective business relations.

"To sustain a claim of intentional interference with contract, the plaintiff must prove that the defendant: (1) was aware of the existence of the contract; (2) intended that one of the parties breach the contract; (3) induced the party to breach the contract or make it impossible for him or her to perform; and (4) acted 'improperly' in causing the breach." *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009) (citing *Krystkowiak*, 90 P.3d at 871).  Because one element requires that the contract must be breached, "[i]f the contract has been fully performed, then there has been no interference." *Id.*

Plaintiff also alleges tortious interference with prospective business relations. Tortious interference with prospective business relations requires essentially the same elements as tortious interference with a contract, except that the former does not require an existing contract, only a "prospective contractual relation." *MDM Group Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 886 (Colo. App. 2007) (quoting

6

Restatement (Second) of Torts § 766B (1979)) ("One who intentionally and improperly interferes with another's prospective contractual relation . . . is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation. . ."). Furthermore, a plaintiff must show that there is "a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope." *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995).

In this case, Plaintiff has provided no evidence—other than his own self-serving affidavit—to substantiate his assertions that Norfolk interfered with the contract between Suntrans and Superloads and Superloads' prospective business relations. "To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (internal citations omitted). Courts cannot consider affidavits that are "replete with factually unsupported conclusions, hearsay, statements indicating no personal knowledge at all, and self-serving assertions not corroborated by reference to any record evidence or contradicted by the evidence or the affiant's previous deposition testimony," for purposes of determining genuine questions of material fact precluding summary judgment. *Frontrange Solutions USA, Inc. v. Newroad Software, Inc.*, 505 F. Supp. 2d 821, 830–31 (D. Colo. 2007) (citing *Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004)).

First, Plaintiff's assertion that there was a breach of contract is directly contradicted by the actual facts and third-party deposition testimony. It is undisputed

that Superloads remained involved in the rail portion of the Transformer shipment until its conclusion and that Suntrans paid Superloads pursuant to the original contract. Thus, the agreement between Suntrans and Superloads was not breached. *Hertz*, 576 F.3d at 1118 ("If the contract has been fully performed, then there has been no interference."). Second, Superloads' allegation that it was replaced as "shipper" is unsubstantiated. Suntrans and HHI corporate designees testified that they never disengaged or terminated Superloads from its contractual responsibilities at any point during the Transformer shipment. Furthermore, there is no evidence that Superloads was ever listed as shipper in any document, including in the contract between Superloads and Suntrans. Plaintiff does not identify any person or entity that ever referred to HHI, instead of Superloads, as shipper nor has Plaintiff produced any contractual documents in which HHI is named as shipper. Again, Plaintiff's only support for this contention is his own self-serving and conclusory affidavit.

      Finally, there is no evidence demonstrating that Norfolk interfered with Superloads' prospective contractual relations. HHI and Suntrans representatives testified in deposition that there were no existing or contemplated contracts between HHI and Superloads other than the Transformer shipment. Thus, Plaintiff's claim that Superloads was the winning bidder on a future project with Suntrans, but that Suntrans withdrew the award because Superloads was on its do-not-use list is directly contradicted by Suntrans and is supported only by Plaintiff's self-serving affidavit. Plaintiff also states that General Motors and Space-X did not "consider" Superloads for a contract; however, Plaintiff has presented no evidence that Superloads had a

reasonable likelihood of contracting with either of these companies, i.e., that Superloads had more than "a mere hope" of entering into any future business deals with General Motors or Space-X.

Plaintiff's conclusory and vague allegations, standing alone, do not create a genuine issue of material fact that should preclude the entry of summary judgment in Norfolk's favor.  *See Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir. 1975) ("[G]eneralized, conclusionary, unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment."); *see also Garret v. Hewlett–Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not consider conclusory and self-serving affidavits."); 11 James Wm. Moore et al., Moore's Federal Practice § 56.41[1][c] (3d ed. 2011) ("Merely restating a pleading, submitting new pleadings, or making bald assertions in a legal memorandum, or even in an affidavit, will not enable the nonmovant to withstand a properly supported summary judgment motion.").

The Court, therefore, finds that no reasonable jury would find that Norfolk interfered with the contract between Suntrans and Superloads or Superloads' prospective business relations.

### IV.   CONCLUSION

Based on the foregoing, the Court ORDERS that Defendant's Motion for Summary Judgment (Doc. # 21) is GRANTED.  Accordingly, this case is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that Plaintiff's Motion for Permission to Employ Competent Certified Paralegal Assistance During Trial (Doc. # 49) is DENIED.  It is

FURTHER ORDERED that Defendant's Response to Motion for Extension of Time to File Objections to Exhibit List (Doc. # 52) is DENIED. It is

FURTHER ORDERED that the Final Trial Preparation Conference set for January 23, 2015, at 9:00 AM and the four-day trial set to begin February 2, 2015, are also VACATED.

DATED:  January __12__, 2015

                                  BY THE COURT:

                                  _____
                                  CHRISTINE M. ARGUELLO
                                  United States District Judge